# Exhibit B

STATE OF MAINE

FRANKLIN, SS

DISTRICT COURT, DISTRICT TWELVE
DIVISION OF FRANKLIN
DOCKET NO. FAR-CV-20-___

| | |
|---|---|
| **BRIAN A. GOODWIN** and **MARIE A.** / <br> **MOSHER GOODWIN,** of New Sharon, / <br> Franklin County, State of Maine, / <br> / <br> Plaintiff / <br> v. / <br> / <br> **CELINK,** a corporation having an / <br> office in Lansing, County of Ingham, / <br> State of Michigan and also having / <br> a mailing address of PO Box 85400, / <br> City of Austin, County of Travis, State / <br> of Texas 78708. / <br> / <br> Defendant / | **COMPLAINT FOR INJUCTIVE RELIEF** <br> **AND STATUTORY DAMAGES** <br> **TITLE 9-A M.R.S. §9-405** |

NOW COMES the Plaintiffs, Brian A. Goodwin and Marie A. Mosher Goodwin by and through their attorney Paul H. Mills, Esq., and hereby states for their Complaint as follows, to wit:-

1. Plaintiffs Brian A. Goodwin and Marie A. Mosher Goodwin are natural persons residing in New Sharon, Franklin County, State of Maine.

2. Defendant Celink is a corporation having an office and place of business at 3900 Capitol City Boulevard, Lansing, County of Ingham, State of Michigan with a mailing address of P.O. Box 85400, Austin, County of Travis, State of Texas 78708.

3. On November 7, 2007 said Brian A. Goodwin and Marie A. Mosher Goodwin (under the name of Marie A. Mosler Goodwin) executed and delivered in favor of Financial Freedom Senior Funding Corporation, a subsidiary of IndyMac Bank FSB, a certain mortgage deed dated that date in the original principal amount of $180,000.00 dated November 7, 2007 recorded at Book 2971, Page 277 Franklin County Registry of Deeds. The mortgage deed conveyed real estate associated with an address of 10 Clearwater Road in New Sharon, Maine being further described in said mortgage deed a true copy of which is appended hereto as "Exhibit A."

4. Defendant Celink is the servicer for said mortgage deed.

5. Pursuant to the terms of said "Exhibit A" mortgage, said mortgage becomes immediately due and payable if the mortgage is no longer occupied by either borrower as their primary residence.

6. On August 25, 2019, the buildings on the subject premises were destroyed by fire.

7. It was determined by the Goodwins that they did not intend to rebuild at the subject premises but that they would instead use the insurance proceeds thereupon to pay off the existing mortgage. Accordingly, a payoff letter was obtained by Celink, being dated December 13, 2019, a true copy of which is appended hereto as "Exhibit B."

8. On January 27, 2020, the Hanover Insurance Group issued a check payable to the Goodwins and Celink dated that that date in the amount of $108,855.87. This check was subsequently endorsed by the Goodwins, sent to Celink and cashed by them.

9. A true copy of the check including the reverse endorsement side indicating that said check has been cashed and the funds paid to Celink is appended hereto as "Exhibit C."

10. However, on February 14, 2020 Celink sent to Plaintiff Brian A. Goodwin a "mortgage due & payable notification" document indicating that there was still an outstanding balance of $109,943.36, this apparently being a 35-day notice letter under familiar principles of Maine's foreclosure law. A copy of said correspondence is appended hereto as "Exhibit D."

11. Said "Exhibit D" notification does not credit the borrowers with the funds received by Celink despite the fact that the "Exhibit C" check indicates that said funds were received by Celink on February 3, 2020, this being 11 days prior to the date of the said correspondence. It cannot thus be claimed that said correspondence "crossed in the mail."

12. Celink has refused to subsequently communicate with said borrowers or with their representatives concerning this matter despite overtures made by them or on their behalf to do so.

13. Accordingly, pursuant to Title 9-A M.R.S. §9-305-B of the Maine Consumer Credit Code, a request for an updated payoff figure was sent to Celink, said letter dated July 16, 2020 and sent via first class mail, certificate of mailing, on July 18, 2020. A true copy of the said correspondence as well as certificate of mailing are appended hereto as "Exhibit E."

14. However, neither the Plaintiffs nor their attorney have received any communication or response from said Celink.

15. Title 9-A M.R.S. §9-305-B provides in pertinent part in pertinent part that "a creditor, assignee or servicer shall respond to a request for a payoff figure within three (3) business days following receipt of such a request from a consumer or an agent of the consumer for a consumer credit transaction secured by a mortgage on real estate."

16. Title 9-A M.R.S. §9-405 (1) provides that "if a creditor, assignee or servicer has violated the portions of this Article applying to ...... timely responses to request for payoff figures §9-305-B ....... any aggrieved consumer has a right to recover actual damages from that person, or in lieu thereof any consumer named as Plaintiff in the Complaint as originally filed has a right to recover from a person violating this Article an amount determined by the Court not less than $250.00 nor more than $1,000.00." In addition, §9-405(8) of said title also provides for an award of reasonable attorney's fees in connection with matters of this nature.

17. Celink's continued refusal to interact with the Plaintiffs or their representatives in any way since the February 14, 2020 letter has left the Plaintiffs in a position of extreme uncertainty. Defendant has refused to acknowledge the receipt of over $100,000.00 on this account, has threatened the Plaintiff with mortgage foreclosure, and refuses to respond to Plaintiffs' request for an updated payoff figure so Plaintiff can pay any remaining nominal amounts as may remain on this account due to interest and charges as may have accrued between the date of the "Exhibit B" payoff letter and the receipt of the January 27, 2020 check.

18. Plaintiffs are attempting to perform their obligations under the said mortgage deed and have said mortgage discharged, but is unable to do so due to Defendant's conduct.

WHEREFORE, Plaintiffs, hereby prays that the Court will enter judgment for Plaintiffs and against Defendant:-

a) For an injunctive order this Court requiring Defendants to comply with Plaintiff's request for an updated payoff statement acknowledging the payment made on January 27, 2020 and received February 3, 2020, or in the alternative if servicer deems that the mortgage loan account was paid in full, that Defendant arrange for the recording at the Franklin County Registry of Deeds a suitable and valid discharge of mortgage and any other security interest associated with the loan; and

b) For statutory damages pursuant to Title 9-A M.R.S. §9-405 (1) of not less than $250.00 nor more than $1,000.00 in addition to costs of Court as well as reasonable attorney's fees pursuant to §9-405 (8).

DATED this 22 day of September, 2020

Paul H. Mills, Esq.
Attorney for Plaintiffs
163 Main Street – Box 608
Farmington, Maine

lll winword FORECLOSURES Goodwin complaint

Record and Return to:
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION ,
A SUBSIDIARY OF INDYMAC BANK, F.S.B.
500 NORTH RIDGE ROAD STE. 500
ATLANTA, GEORGIA 30350**
**PHONE: 1-800-774-6266**

Cushing & Dolan, P.C.
520 Providence Highway
Suite 10
Norwood, MA 02062

_____ [Space Above This Line For Recording Data] _____

**State of Maine**          FHA Case No.    **231-0883112-952/255
3000114940**

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **NOVEMBER 07, 2007** . The mortgagor is
**Brian A.Goodwin and Marie A. Mosler Goodwin**

whose address is **10 CLEARWATER ROAD
NEW SHARON, MAINE 04955** ("Borrower").
This Security Instrument is given to
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION , A SUBSIDIARY OF
INDYMAC BANK, F.S.B.** , which is
organized and existing under the laws of **THE STATE OF DELAWARE** , and whose address is
**500 NORTH RIDGE ROAD STE. 500, ATLANTA, GEORGIA 30350**

("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: *(a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of*
**ONE HUNDRED EIGHTY THOUSAND AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $ **180,000.00** ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on



* F F 8 0 0 0 6 *

**SEPTEMBER 06** , 2087 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in **FRANKLIN** County, Maine:
**see attached legal description**

which has the address of **10 CLEARWATER ROAD** ,
[Street]
**NEW SHARON** , **MAINE** 04955 ("Property Address");
[City] [State] [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be



lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness



under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

       **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

          (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

          (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

       **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

          (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

          (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

          (iii) An obligation of the Borrower under this Security Instrument is not performed.

       **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

       **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

          (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

          (ii) Pay the balance in full; or

          (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

          (iv) Provide the Lender with a deed in lieu of foreclosure.

       **(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

       **(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any



* F F 8 0 0 0 6 *

difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

 **(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

 **(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

 **(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

 **(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

 **(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

  (i) This Security Instrument is assigned to the Secretary; or

  (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.



**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.



20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

(a) Borrower fails to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the sums secured.

(b) Lender sends to Borrower, in the manner described in Paragraph 16 above, a notice that states:

(i) The promise or agreement that Borrower failed to keep;

(ii) The action that Borrower must take to correct that default;

(iii) A date by which Borrower must correct the default. That date must be at least 30 days from the date on which the notice is given;

(iv) That if Borrower does not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;

(v) That if Borrower meets the conditions stated in Paragraph 22 below, Borrower will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(vi) That Borrower has the right in any lawsuit for foreclosure and sale to argue that Borrower has kept Borrower's promises and agreements under the Note and under this Security Instrument, and to present any other defenses that Borrower may have.

(c) Borrower does not correct the default stated in the notice from Lender by the date stated in that notice.

21. *Lien Priority. The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.*

22. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of 4.9300 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **FEBRUARY, 2008**    , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.



**X** (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FOURTEEN AND 930/1000** percent (**14.93000** %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Discontinuance of Lender's Enforcement of Security Instrument.** If Lender requires immediate payment in full, Borrower may have the right to have enforcement of this Security Instrument discontinued. Borrower will have the right at any time before a judgment has been entered enforcing this Security Instrument if Borrower meets the following conditions:

(a) Borrower pays the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(b) Borrower corrects the failure to keep any other promises or agreements made in this Security Instrument; and

(c) Borrower pays all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorney's fees; and

(d) Borrower does whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and Borrower's obligations under the Note and this Security Instrument continue unchanged.

If Borrower fulfills all of the conditions in this Paragraph 22, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required.

**24. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

**25. Payment During Foreclosure.** Borrower agrees that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by Borrower, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Paragraph 20 above. Lender may use such monies to pay off any part of the sums secured without affecting Lender's right to continue foreclosure and sale.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider  ☐ Shared Appreciation Rider  ☐ Planned Unit Development Rider

☐ Other (Specify)



BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____(Seal)
BRIAN A. GOODWIN                                                                    -Borrower

_____(Seal)
MARIE A. MOSHER GOODWIN                                                     -Borrower

_____(Seal)
                                                                                                 -Borrower

_____(Seal)
                                                                                                 -Borrower

_____(Seal)
                                                                                                 -Borrower

_____(Seal)
                                                                                                 -Borrower

_____(Seal)
                                                                                                 -Borrower

_____(Seal)
                                                                                                 -Borrower

34BC 07/07                                      Page 9

——————— [Space Below This Line For Acknowledgment] ———————

STATE OF *Maine*        *Franklin*        COUNTY SS:

The foregoing instrument was acknowledged before me this  7th day of *November* , by  2007

*Brian A. Goodwin and*
*Marie A. Mosher Goodwin*

*Teresa L Barnett*

Name: *TERESA L BARNETT*

```
TERESA L. BARNETT
Notary Public
Maine
My Commission Expires Aug 3, 2011
```



* F F 8 0 0 0 6 *

Exhibit A

Property Address: 10 CLEARWATER ROAD, NEW SHARON, MAINE 04955

The land in New Sharon, County of Franklin, State of Maine, bounded and described as follows: to wit-

Easterly by the Shadagee Road, so called, being the road between Allens Mills and New Sharon; southerly by the road leading from the Wescott Place, so called, now or formerly owned or occupied by Luke Capen, to the Gerald Pond Place, so called; westerly by land formerly of Walter smith, now or formerly owned or occupied by Ernst Friermuth, the line being marked by spotted trees, and by the brook flowing out of Clearwater Lake, northerly by the power line right of way of Central Maine Power Company.

Also an easement to a certain spring on land now or formerly of Mary K. Snow across the Shadagee Road from the premises above described, with right for the grantees, their heirs and assigns as aforesaid, to enter upon the premises now or formerly of Mary K. Snow to lay and maintain pipe lines from the spring and to take water therefrom forever.

Excepting therefrom those parcels conveyed out at Book 1301 Page 56, Book 1368 Page 334 and Book 2669 Page 21.

For deed reference, see Book 1200, Page 164.

FRANKLIN COUNTY
*Susan O. Black*
Register of Deeds



P.O. Box 40724
Lansing, MI 48901-7924
Customer Service: (866) 654-0020
Fax: (866) 616-2160

Brian A. Goodwin
Marie A. Mosher Goodwin
10 Clearwater Road
New Sharon, ME 04955

LoanType: HECM
Loan Number: 3046063
Quoted Payoff Date: Dec 31, 2019
Today's Date: Dec 13, 2019

RE: Loan Payoff

Dear Brian A. Goodwin

We are pleased to inform you that as of Dec 31, 2019 the payoff for the loan listed above is as follows:

| | | |
|---|---|---|
| Current Unpaid Balance | $108,452.43 | As of Dec 1, 2019 |
| Accrued Interest on Unpaid Balance | $230.87 | |
| MIP for current month | $44.57 | |
| Servicing Fee for current month | $30.00 | |
| Estimated Recording Fees | $98.00 | |
| Total Payoff | $108,855.87 | |

Please note that only wired or certified funds are able to be accepted for payoff. All other types of payment received (personal check, business check, etc.) cannot be accepted and will be returned to sender. Please see the next page for wiring instructions, if needed.

Send payment to:   Celink
3900 Capital City Boulevard
Lansing, MI 48906

Celink will process the release of the first lien and request the US Department of Housing and Urban Development to release the second lien, which will be forwarded to you by their office. If your property is located in Puerto Rico the original note will be sent to you.

Please note the above quote for payoff is only good through Dec 31, 2019. To obtain an accurate payoff figure after that date, you will need to contact the Reverse Mortgage Department to re-request an updated payoff.

Payoff funds received after 5:00 pm EST, or on a banking holiday, will be applied on the next business day. We reserve the right to adjust any portion of this statement at any time for one or more of the following reasons, but not limited to: recent advances, returned items, additional fees or charges, disbursements made on your behalf, transfer of servicing and/or inadvertent clerical errors.

If you have any questions please email Payoff@reversedepartment.com or call us at 866.654.0020.

Sincerely,
Reverse Mortgage Department
Celink

# EXHIBIT C

THE ORIGINAL DOCUMENT CONTAINS A VOID PANTOGRAPH, A MICROPRINT LINE AND A REFLECTIVE WATERMARK ON THE BACK

| ADJ OFF | CLAIM NUMBER | FEAT | CLASS LETTER | INSURED OR PRINCIPAL & ADDRESS |
|---|---|---|---|---|
| 19 | 00518082 | 01 | | Brian Goodwin, Marie Goodwin |

Brian Goodwin, Marie Goodwin
10 Clearwater Road
New Sharon, ME 04955

**Hanover** CHECK NO. 81698294

DEUTSCHE BANK TRUST COMPANY DELAWARE
WILMINGTON, DELAWARE

The Hanover Insurance Group
Executive Office: Worcester, Massachusetts 01653

POLICY NUMBER: HVP 9132602  CO 03  STAFF CAT. NO. OCS

DATE OF LOSS 8/25/19  PAYEE  IN PAYMENT OF Building ACV Settlement

PAY One hundred eight thousand eight hundred fifty five and 87/100ths dollars****************

VOID AFTER 6 MONTHS  PAY → $108,855.87****

DATE ISSUED January 27, 2020
ISSUED AT Worcester, MA

TO THE ORDER OF
Brian Goodwin, Marie Goodwin and CELINK

Joseph A. Green  0030BT

3046063

⑆81698294⑆ ⑆031100380⑆ 00535320⑈

---

## DELAWARE DISBURSEMENTS

### Item Information

| Account | 535320 | Amount | 108855.87 |
|---|---|---|---|
| Control | 0 | Cycle | 1 |
| Cycle Date | 02/04/2020 | Date | 02/04/2020 |
| Depositor Acct | 535320 | Depositor ISN | 68357210 |
| Entry | 4004 | ISN | 68384260 |
| RT | 03110038 | Serial Number | 81698294 |



**Reverse Mortgage Servicing Department**
P.O. Box 85400 - Austin, TX 78708
(866) 278-2008 Office
(866) 447-2022 Fax

February 14, 2020

Sent via Certified Mail

MARIE A. MOSHER GOODWIN
6 CRYSTAL VALE RD
NEW SHARON, ME 04955

## Mortgage Due & Payable Notification

> **This is an attempt to collect a debt. However, if your loan is currently, or was previously involved in a bankruptcy where your case was discharged and/or you are surrendering the real property in which Celink has an interest, we are not seeking personal liability against you. We are pursuing our rights as they relate to the real property under the terms of the Deed of Trust or Mortgage.**

RE: Reverse Mortgage Loan #3046063

Dear Borrower:

The reverse mortgage in the amount of $109,943.36 * as calculated to the end of the current month, is technically in default due to the non-occupancy of the property as the principal residence.

This default must be resolved by any of the following methods:



A. The Borrower and Co-Borrower (if applicable) move back to re-occupy the property as their principal residence.

B. The debt must be paid-in-full within 35 days from the date of this letter with wired or certified funds.

C. The mortgage will be released and no deficiency judgment filed if the property sells for at least 95% of the appraised value with the proceeds made payable to Celink, even if the debt is greater than the appraised value, under a HUD approved Short Sale.
   ➢ Please contact us for more information if you are interested in this option and believe that the property value is less than the outstanding principal balance.

D. If the debt is not paid-in-full, or the property is not sold within 35 days from the date of this letter, we are required to initiate foreclosure proceedings.

E. We are permitted to consider accepting a deed-in-lieu of foreclosure, as long as good marketable title can be conveyed.

**If you fail to cure this breach within 35 days from the date of this letter, we will**



PLEASE SEE LAST PAGE FOR IMPORTANT DISCLOSURES

**proceed immediately with foreclosure and sale of the property.**

If you are actively trying to market the property to sell the home and use the proceeds to pay off the reverse mortgage, there are potentially options to obtain an extension of time. Please contact our office to discuss these options. Please note that you will need to be able to provide documentation that the home is currently listed on the real estate market.

Once the foreclosure action begins, you can still pay all monies due, including attorneys fees, and have the foreclosure process discontinued.

In addition to the options detailed above, we strongly encourage you to contact a HUD housing counselor in your area, free of charge, by calling them toll-free at (800) 569-4287.

**Whichever option that you choose, HUD guidelines require that we obtain a full appraisal on the property. You may be receiving a phone call from our appraisal vendor in the coming weeks to attempt to schedule an appointment to visit the property. You may request an appraisal, at your own expense, if an estimate of the propertys current value is desired. Please note that all appraisals must be completed by a HUD-certified appraiser.**

Please note that if the reverse mortgage had available funds in a Tax & Insurance Set Aside (or Lifetime Expectancy Set Aside) to pay for property taxes and/or insurance, those funds are no longer available due to the due and payable status on the loan. You will be responsible for paying for any future tax and insurance obligations on the property from this point forward.

We realize these are very difficult times and are willing to work with you, but it is essential that you contact us immediately to discuss these important matters. You may reach our Reverse Mortgage Servicing Department at (866) 278-2008 from 8:00am-6:00pm EST Monday through Thursday and 8:00am-5:00pm EST on Friday.

Sincerely,

Reverse Mortgage Servicing Department


* This is not a payoff figure. Please contact our Reverse Mortgage Servicing Department to obtain an accurate payoff amount.


**This is an attempt to collect a debt and any information obtained will be used for that purpose.**



EQUAL HOUSING
OPPORTUNITY



**Letter of Intent**

Loan Number: 3046063
Borrower Name: BRIAN A.  GOODWIN & MARIE A. MOSHER GOODWIN
Property Address: 10 Clearwater Road NEW SHARON, ME  04955

Please utilize the form below to document your intentions regarding the property listed above.  If you intend to sell the home or otherwise pay the balance due in full, this information is crucial towards obtaining additional time extensions for you, if necessary, to satisfy the loan.

**Please complete the form within 30 days from the date of the attached letter and mail it to the address above or fax it to (866) 447-2022.**

| Description of Intention (Check option that applies) | Information/Documentation needed |
|---|---|
| _____**Intend on listing the property for sale.** | Please provide a copy of the listing agreement, MLS printout, or proof that it is listed "For Sale by Owner" |
| _____**Intend on obtaining financing to keep the property.** | Please provide proof that financing has been requested and is in process. |
| _____**Intend on requesting a short sale on the property.** | Please call to discuss this option in more detail with a specialist at (866) 278-2008. |
| _____**Intend on requesting that the property be deeded back to the owner of the loan.** | Please call to discuss this option in more detail with a specialist at (866) 278-2008. |
| _____**Request that the servicing department proceed with foreclosure on the property.** | Please ensure that you have signed below if you are selecting this option. |

**By completing this form and signing below, you are <u>not</u> obligating yourself to take the actions above.  This form simply documents your intentions.**

_____          _____          _____
Signature                                          Printed Name                               Date

_____          _____          _____
Signature                                          Printed Name                               Date


EQUAL HOUSE
OPPORTUNI

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

### Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

### What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

### How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Reverse Mortgage Servicing Department, PO Box 40724, Lansing MI 48901-7924 Toll-Free(866)278-2008
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

### How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the Unites States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

# IMPORTANT DISCLOSURES

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge in bankruptcy, this communication is for informational purposes only and is not an attempt to collect a debt. If you are represented by an attorney, please provide this notice to your attorney.

## Notice of Error and Request for Information
Federal law gives customers the right to notify us of an error regarding the servicing of their loan or to request information regarding their loan. If you wish to provide a notice of error or a request for information, you must write to us at the following address: P.O. Box 85400 Attn: Mailstop AUS-01, Austin, Texas 78708. The letter must provide the customer's name, loan number, and description of the error or detailed list of the information being requested.

## If your property is located in the State of Texas:
COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above or by telephone listed above or by email at smlinfo@sml.texas.gov.

## If your property is located in the State of New York:
Your servicer is either a registered servicer or exempt servicer registered with the Superintendent of the New York State Department of Financial Services. For further information or to make a complaint regarding your servicer you may contact the New York State Department of Financial Services Consumer Assistance Unit at (800) 342-3736 or by visiting www.dfs.ny.gov.

## If your property is located in the State of Arkansas:
Your servicer is licensed in Arkansas and complaints about your servicer may be submitted to the Arkansas Securities Department via the Department's website (http://www.securities.arkansas.gov/) or toll-free at (800) 981-4429.

## If your property is located in the State of Oregon:
Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

## If your property is located in the State of Hawaii:
Your servicer is a licensed mortgage servicer in Hawaii. Complaints may be submitted to the Hawaii Department of Financial Institutions at P.O. Box 2054, Honolulu, Hawaii 96805 or dfi@dcca.hawaii.gov. A complaint form and instructions regarding how to file a complaint are available at http://cca.hawaii.gov/dfi/file-a-complaint/.



EQUAL HOUSING
OPPORTUNITY

**EXHIBIT E**

LAW OFFICE OF

# MILLS AND MILLS
163 MAIN STREET
P.O. BOX 608
FARMINGTON, MAINE 04938-0608

PAUL H. MILLS
DARRELL WHITNEY, JR.

FOUNDED IN 1911
BY SUMNER P. MILLS

TELEPHONE
207-778-3521
207-778-3522
FAX
207-778-0306
EMAIL
pmills@myfairpoint.net

July 16, 2020

Celink
Attn: Reverse Mortgage Servicing Dept.
P.O. Box 85400
Austin, TX 78708

**RE: Brian A. Goodwin and Marie A. Mosler Goodwin – Reverse Mortgage Loan
No. 3046063**

To whom it may concern:

This office has been retained to represent the Goodwins in the above-reference reverse mortgage matter.

In response to your "Mortgage Due & Payable Notification" of February 14, 2020, we wish to point out that your statement of the approximate balance of $109,943.36 fails to take into account the check in the amount of $108,855.87 which was received and cashed by Celink.

Please find enclosed a copy of this check including the Celink endorsement and evidence of payment.

Your "Notification" fails to take into account the payment which Celink had for nearly two weeks prior to the issuance of the "Notification."

Mr. and Mrs. Goodwin realize that there is likely to still be a balance due on the account once proper credit for this payment has been given and the account balance appropriately recalculated, this being a nominal amount of approximately $1,000.00. The Goodwins are prepared to make payment of this remaining balance once you have provided us with the recalculated balance.

We urge you to address this matter immediately, as your "Notification" was obviously significantly in error.

Thank you.

Very truly yours,

Paul H. Mills

PHM/ca
Enc.

cc: Brian and Marie Goodwin

| U.S. POSTAL SERVICE | **CERTIFICATE OF MAILING** |
| --- | --- |

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL. DOES NOT
PROVIDE FOR INSURANCE-POSTMASTER

Received From:

~~Mills & Mill Law Office~~
~~P.O. Box 608~~
Farmington, ME 04938-0608

One piece of ordinary mail addressed to:

Celink
ATTN: Reverse Mortgage Servicing ~~Dept.~~
P.O. Box 85400
Austin, TX 78708

PS Form 3817, January 2001

U.S. POSTAGE PAID
FARMINGTON, ME
04938
JUL 16 20
AMOUNT
$1.50




STATE OF MAINE                          DISTRICT COURT, DISTRICT TWELVE
Franklin, ss                            LOCATION: Farmington, Maine
                                        DOCKET NO: FAR-CV-20-_____

**BRIAN A. GOODWIN** and              /
**MARIE A. MOSHER GOODWIN,**          /
                                       /
      PLAINTIFFS                     /
                                       /
v.                                     /         **NOTICE REGARDING**
                                       /         **ELECTRONIC SERVICE**
**CELINK,** a corporation having an   /
office in Lansing, County of Ingham,   /
State of Michigan and also having a    /
mailing address of PO Box 85400,       /
City of Austin, County of Travis, State /
of Texas 78708,                        /
                                       /
      DEFENDANT                      /
                                       /
                                       /

**NOTICE TO PARTIES**: All parties who are represented by an attorney are subject to the requirements of Electronic Service under Rule 5 of the Maine Rules of Civil Procedure.

**OPT IN:** *If you do not have an attorney,* papers that must be served on you by other parties in this case will be sent to you through the regular mail to your address of record. But you have a choice to request that all papers required to be served on you by other parties in this case be sent instead electronically to your designated email address; and you may also agree to serve by email all papers you are required to serve other parties in this case.

Please note: any electronic service that you opt into applies only to papers served on you by other parties, and/or to papers you are required to serve on other parties. *It does not apply to notices, orders, or other papers generated by the court, or to any papers you must file with the court.* You must file all court papers in paper form by mail or in person, and all Court papers will continue to be sent to you by regular mail.

**If you choose not to opt in, you do not need to do anything**. If you would like to receive and/or serve papers on other parties electronically, you must meet the requirements set forth below. Check the appropriate box(es) and mail (or scan and email) the signed form to all other parties in the case. Do not file this form with the Court.

☐**Electronic Receipt**: I choose to OPT IN to receive by email documents from other parties in this case. I have reviewed and meet all of the following electronic receipt requirements:

- •I have a trusted email account and I have daily access to this account;
- •I understand that I will receive time-sensitive documents through this email address including documents that may require me to take action in this case;
- •This email account has available electronic storage of at least 1 gigabyte;
- •This email account accepts emails with attachments of up to 10 megabytes; and
- •I will be able to maintain this email account throughout this case.

☐**Electronic Delivery**: I choose to OPT IN to deliver documents to other parties by email in this case. I have reviewed and meet all of the following electronic delivery requirements:

- • I meet all other requirements for electronic receipt listed above;
- • I have the ability to scan and create pd files of documents I am required to serve on other parties.

Dated: _____

_____
Self-Represented Party (Signature)

_____
(Print name)

_____
(Print email address)